357 So.2d 90 (1978)
Joan Capdeville, wife of Curtis R. BOISFONTAINE
v.
Curtis R. BOISFONTAINE.
No. 9090.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1978.
Rehearing Denied April 11, 1978.
Writs Refused May 19, 1978.
*91 Chaffe, McCall, Phillips, Toler & Sarpy, Harry McCall, Jr. and Norris S. L. Williams, New Orleans, for plaintiff-appellee.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Max Nathan, Jr. and Robert C. Lowe, New Orleans, for defendant-appellant.
Before REDMANN, LEMMON and GULOTTA, JJ.
LEMMON, Judge.
This is an appeal by the husband from a judgment setting C.C. art. 160 alimony at $2,222.22 per month, in addition to support for one child fixed by consent at $325.00 per month, plus school tuition and certain other expenses. The husband contends in this court that the record does not support a conclusion that the wife does not have "sufficient means for her support" and alternatively that the award constitutes an abuse of discretion, when measured against the proper standard for setting C.C. art. 160 alimony.

I
The alimony rule was tried shortly after rendition of the divorce. The wife had no income, and there was no evidence of her ability to earn income [a factor apparently not considered important in the light of Ward v. Ward, 339 So.2d 839 (La.1976)]. Her cash on hand was approximately $200.00. In addition she had $6,636.00 remaining in a homestead account, representing the balance of the proceeds of the community property settlement (in which she received about $17,000.00 and paid $10,000.00 in bills), and she was to receive that week the sum of $25,747.00 as her share of the net proceeds of the sale of the family home. Other assets were corporate stock worth $138.75, an eight-year old automobile valued at $250.00, a promissory note executed by her mother in the amount of $5,000.00, a five-year old fur jacket, a 26year old fur coat, and certain furniture received in the community property settlement.[1]
She listed current debts, principally incurred in these proceedings and in the community property settlement and to be paid from the forthcoming proceeds of the house sale, at about $18,000.00. Thus, the wife's current assets (exclusive of furniture, furs and silverware) in excess of current debts was slightly less than $20,000.00.
The wife testified that she intended to use the balance of the proceeds from the house sale, after all current debts were paid, as a down payment on a smaller house.[2]
In 1976 the husband earned gross income of $117,000.00 and net income of $80,000.00.

II
The trial court held that the wife did not have "sufficient means for her support", as contemplated by C.C. art. 160, reasoning (1) she should be allowed to use the cash balance *92 as a down payment on a new house, which was essentially substituting her share of the equity in the family home for equity in a smaller home, and (2) she did not have to sell the furniture, furs and silverware before being entitled to alimony, because she would use the furniture, and the furs and silverware were "of no great value, perhaps a few thousand dollars worth".
The husband argues that even if only the liquid or readily liquidable assets of about $20,000.00 are considered, the wife cannot be deemed to have insufficient means.
The determination of "sufficient means" is insusceptible of solution by any exact formula or monetary index and should be accomplished by application of the "rule of reasonableness in light of all the factors". Loyacano v. Loyacano, 358 So.2d 304 (La.1978), rehearing granted. Factors to be considered include the type of assets and their liquidity, the consequences of the liquidation, and the relative financial positions of the parties. Loyacano v. Loyacano, supra.
Applying the rule of reasonableness in the light of all circumstances, and considering the relative financial position of the parties, we conclude the record supports the trial court's finding that the wife did not have sufficient means.
The trial court's permitting the wife to use at least part of the cash, which represented equity from the forced sale of the old home, to obtain equity in a new home is not unreasonable under the overall circumstances, if the new home is purchased at a reasonable cost. Relevant considerations are that most of the cash would otherwise be required for payment of taxes and that the wife's maintenance (which the husband is obliged to provide) includes either rent or house note.
We therefore conclude that the wife was entitled to alimony in a reasonable amount.

III
We agree with the husband's contention that the trial court exceeded its discretion in setting alimony at exactly onethird of the husband's net income, when the wife's needs did not justify this amount. We accordingly set aside the award and set alimony on the basis of the record.
Alimony under C.C. art. 160 is not awarded in an amount sufficient to support the wife in the manner to which she was accustomed while the parties were living together, but rather in an amount sufficient to provide for her maintenance, which includes food, clothing, shelter and other basic necessities. Ward v. Ward, 339 So.2d 839 (La.1976); Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973); Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950).[3]
The trial court's extensive reasons for judgment hardly mentioned the wife's needs, claimed to exceed $55,000.00 per year for herself, but referred primarily to the husband's income, which was not the critical factor in this case. While a husband's income, when substantial, may be considered in relation to the wife's needs in setting alimony, the amount of the award is primarily based on needs and must have some basis in fact.
In estimating her living expenses, the wife listed the amounts spent during the past 12 months, during which time she was receiving alimony pendente lite (which is related to the standard to which she was accustomed before the separation) and was living in the large family home, and then she increased those amounts in estimating her future needs. Pertinent to her monthly maintenance are the following estimated expenses: House note, $680.00; house insurance, $50.00; real estate taxes, $200.00; gas and electricity, $214.00; sewerage and water, $18.00; telephone, $52.00; house upkeep, $63.00; pest control, $7.00; drugs, $40.00; medical and eye doctor, $34.00; *93 dental, $16.00; medical insurance, $69.00; clothing and cleaning, $133.00; food, $517.00; car note and maintenance, $250.00; car insurance, $293.00; gasoline, $99.00; and taxes on alimony in an undetermined amount.
Considering that the house note and expenses related to the house must be reduced to an amount more reasonably related to the reasonable needs of one person depending upon alimony for this support and that the cost of food is greatly overstated, and further observing that a wife of 26 years should not be impoverished because her marriage to a spouse with substantial income has ended through no fault of her own, although the spouse is not obligated to continue her in her former standard of living, we fix alimony at $1,500.00 per month.
Accordingly, the judgment of the trial court is amended to reduce the award of alimony from $2,222.22 to $1,500.00 per month. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] While certain heirloom jewelry had been listed in the community property settlement, the wife at time of trial had returned the jewelry to her mother, because she could not afford the insurance.
[2] The wife's share of the taxes on the sale of the family home was expected to be from $9,000.00 to $12,000.00, but both counsel agreed that reinvestment in a new home could defer the tax liability entirely or to a substantial degree.
[3] In determining that C.C. art. 160 alimony was excessive, we do not place great significance on the fact that the award exceeded the alimony pendente lite paid at the rate of $1,600.00 per month, because that amount was set by agreement of the parties for the purpose of avoiding litigation at that stage.